<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

</div>

| | |
|---|---|
| **New Amsterdam LLC,** | |
| **Plaintiff,** | **Case No. 2:23-cv-421** |
| **v.** | **JURY TRIAL DEMANDED** |
| **Medtronic plc, Medtronic, Inc., Medtronic USA, Inc., Medtronic Xomed, Inc., and Intersect ENT, Inc.,** | |
| **Defendants.** | |

<div align="center">

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

</div>

New Amsterdam LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Medtronic plc ("Medtronic Ireland"), Medtronic, Inc. ("Medtronic USA Parent"), Medtronic USA, Inc. ("Medtronic USA"), Medtronic Xomed, Inc. ("Medtronic Xomed"), and Intersect ENT, Inc. ("Intersect") (collectively, "Medtronic" or "Defendant"), and alleges, upon information and belief, as follows:

<div align="center">

**THE PARTIES**

</div>

1.      New Amsterdam LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 163 Bogerts Mill Road, Harrington Park, New Jersey 07640.

2.      Upon information and belief, Defendant Medtronic plc is a corporation organized and existing under the laws of Ireland, having its principal office at 20 On Hatch, Lower Hatch Street, Dublin

2, Ireland, and its operational office at 710 Medtronic Parkway, Northeast. Minneapolis, MN 55432.

3.      Upon information and belief, and as alleged and shown below, Defendant Medtronic, Inc. is a corporation organized and existing under the laws of the state of Minnesota, having its principal office at 710 Medtronic Parkway, Northeast. Minneapolis, MN 55432. Defendant, through joint enterprise as alleged below, has multiple places of business in this District located in Tyler, Longview, Sherman, Texarkana, Beaumont, Frisco, and Plano, Texas.

4.      Upon information and belief, and as alleged and shown below, Defendant Medtronic USA, Inc. is a corporation organized and existing under the laws of the state of Minnesota, having its principal office at 710 Medtronic Parkway, Northeast. Minneapolis, MN 55432. Defendant, through joint enterprise as alleged below, has multiple places of business in this District located in Tyler, Longview, Sherman, Texarkana, Beaumont, Frisco, and Plano, Texas.

5.      Upon information and belief, and as alleged and shown below, Defendant Medtronic Xomed, Inc. is a corporation organized and existing under the laws of the state of Delaware, and through joint enterprise as alleged below, has multiple places of business in this District located in Tyler, Longview, Sherman, Texarkana, Beaumont, Frisco, and Plano, Texas.

6.      Upon information and belief, and as alleged and shown below, Defendant Intersect ENT, Inc. is a corporation organized and existing under the laws of the state of Delaware, and through joint enterprise as alleged below, has multiple places of business in this District located in Tyler, Longview, Sherman, Texarkana, Beaumont, Frisco, and Plano, Texas. As shown and further alleged below, Intersect was acquired by Medtronic Ireland in May, 2022, and now holds itself out as Medtronic. As shown in the press release, the acquisition was to acquire the Accused Intrumentalities, as defined below, and which includes the SINUVA line.

# Medtronic completes acquisition of Intersect ENT

Neuroscience Portfolio

Acquisition adds innovative bioabsorbable steroid-eluting sinus implants to ENT portfolio

DUBLIN and MENLO PARK, Calif., May 13, 2022 /PRNewswire/ -- Medtronic plc (NYSE: MDT), a global leader in healthcare technology, today announced that it has completed the acquisition of Intersect ENT, expanding the company's comprehensive ear, nose, and throat (ENT) portfolio with innovative products used in sinus procedures to improve post-operative outcomes and to treat nasal polyps.

As a result of the close of the transaction announced on Aug. 6, 2021, Medtronic has acquired Intersect ENT's PROPEL™ and SINUVA™ (mometasone furoate) sinus implant product lines and technology, intellectual property, and Menlo Park, Calif., facility. Intersect ENT employees also join Medtronic through this acquisition. A former Intersect ENT brand, Fiagon, was divested simultaneously at close, and those products – Cube™ navigation system and VenSure™ balloon sinus dilation system – were not included in the acquisition.

who suffer from chronic rhinosinusitis (CRS). CRS is one of the most common health care problems in the U.S., with approximately 30 million adults diagnosed annually. It has been associated with lost days of work, decreased productivity, and even depression and anxiety, with most patients reporting 5-15+ years of suffering and medical treatment.

Through this acquisition, Medtronic gains PROPEL and SINUVA, which are unique bioabsorbable, steroid-eluting implants for sinus patients. PROPEL implants are inserted following endoscopic sinus surgery to maintain sinus patency and provide localized steroid delivery. SINUVA implants are designed for use in the physician's office setting for the treatment of nasal polyps in adult patients who have had ethmoid sinus surgery.

*See* https://news.medtronic.com/2022-05-13-Medtronic-completes-acquisition-of-Intersect-ENT



See https://www.intersectent.com/

7.      Upon information and belief, at least since May 2022, Medtronic Ireland makes, uses, sells, offers for sale, and/or imports the Accused Products.

8.      Upon information and belief, in acquiring Intersect, Medtronic Ireland assumed all liabilities arising from Intersect's past and present acts and omissions.

9.      Upon information and belief, and as shown above, Intersect operates within the "Neuroscience Portfolio at Medtronic." *See* https://news.medtronic.com/2022-05-13-Medtronic-completes-acquisition-of-Intersect-ENT. Upon information and belief, Medtronic Ireland receives revenue from Intersect's actions and products.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          3

10.     Upon information and belief, Medtronic USA Parent, and along with its subsidiaries Medtronic USA, Medtronic Xomed and Intersect, are all subsidiaries of Medtronic Ireland.

11.     Upon information and belief, Intersect has at all times been the manufacturer of the Accused Instrumentalities, and since May 2022, Medtronic USA and Medtronic Xomed sell and offer to sell the Accused Instrumentalities.

12.     Upon information and belief, Medtronic Ireland directs and controls the decisions of Medtronic USA Parent, Intersect, Medtronic USA, and Medtronic Xomed regarding the Accused Instrumentalities. Indeed, two executive officers of Medtronic Ireland, CEO Geoff Martha and CFO Karen Parkhill, are the same as Medtronic USA Parent.

| Key People Medtronic PLC | |
|---|---|
| **Board of Directors** | |
| Name/Title | Current Board Membership |
| Geoffrey Straub Martha<br>Chairman & Chief Executive Officer | Medtronic Communities Foundation, Northside Achievement Zone, Medtronic France SAS, Medtronic of Canada Ltd., Medtronic, Inc., Medtronic Plc, Children's HeartLink, Inc. |
| Gregory P. Lewis<br>Director | Medtronic Plc |
| Kevin E. Lofton<br>Independent Director | Medtronic Plc, Gilead Sciences, Inc., Morehouse School of Medicine, Conifer Health Solutions LLC, Catholic Health Association of the USA |
| **Executives** | |
| Geoffrey Straub Martha<br>Chairman & Chief Executive Officer | Gregory L. Smith<br>Executive VP-Global Operations & Supply Chain |
| Karen L. Parkhill<br>Chief Financial Officer & Executive Vice President | |

*See* https://www.wsj.com/market-data/quotes/MDT/company-people (screenshot of key people of Medtronic plc from Wall Street Journal) and https://www.medtronic.com/us-en/our-company/leadership.html (Medtronic website of leadership for Medtronic USA Parent).

13.     Upon information and belief, Defendants are engaged in a joint enterprise to exploit and monetize the Accused Instrumentalities in the United States, including within this Judicial District, and are jointly and severally liable to Plaintiff for all damages resulting therefrom.  By

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          4

way of example, and on information and belief, Defendant Medtronic USA Parent is the owner in all rights to the trademark "Medtronic" with the USPTO. Moreover, Medtronic patent rights appear to be spread across a variety of Medtronic subsidiaries, but under common control and direction. Indeed, Medtronic Ireland, Medtronic USA Parent, Medtronic Xomed and other Medtronic subsidiaries have all, at different occasions, brought IPR proceedings on behalf of Medtronic. Further, Medtronic USA Parent, Medtronic USA and other Medtronic subsidiaries have also brought enforcement actions on behalf of Medtronic numerous times in District Courts, for example, *Medtronic, Inc., Medtronic USA, Inc. et al v. Axonics Modulation Technologies, Inc.*, Case No. 8-19-cv-02115 (C.D. Cal. Nov. 9, 2019). Further, as noted above, the business headquarters for Defendants Medtronic Ireland, Medtronic USA Parent and Medtronic USA are the same.  Stull further, the Accused Instrumentalities are marketed in the same form, under the same names (*e.g.,* Medtronic), by all Defendants.  On information and belief, there exists written agreement(s) among and between Defendants governing the rights, duties, and responsibilities of each entity in their collective effort to exploit and monetize the Accused Instrumentalities in the United States, including within this Judicial District, all to the harm of Plaintiff.

14.   Upon information and belief, Defendants therefore sell and offer to sell products and services throughout the United States, including in this judicial district, and introduce products and services into the stream of commerce that incorporate infringing technology, knowing that they would be sold in this judicial district and elsewhere in the United States.

## **JURISDICTION AND VENUE**

15.   This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

16.   This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant transacts business within this District and

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                              5

elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of patent-in-suit in this District and elsewhere in the State of Texas.

17.     Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District.  Defendant has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents, including the accused products as alleged herein, as well as providing service and support to its customers in this District.  Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

18.     Defendant maintains regular, physical, continuous, and established places of businesses, including places of business for numerous employees in this District, which Defendant has established, ratified, and controlled; have employed people to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

19.     As shown below, but only as limited examples, Defendant has employees in the Eastern District of Texas, including in Tyler, Longview, Sherman, Texarkana, Beaumont, Frisco, and Plano, Texas:

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    6







**Tommy Hampton** · 3rd

Medtronic

Principal Sales Rep Medtronic

Sherman, Texas, United States · Contact info

413 connections

Message

**Activity**

412 followers

**Tommy hasn't posted yet**

Recent posts Tommy shares will be displayed here.

Show all activity →

**Experience**

**Principal Sales Rep**

Medtronic

Apr 2003 - Present · 20 yrs 5 mos

Sherman/Denison, Texas Area

**Staci Brown** · 3rd

Medtronic

Clinical Specialist at Medtronic

Texarkana, Texas, United States · Contact info

143 connections

Message + Follow More

**Activity**

143 followers

**Staci Brown** reposted this • 2w

253 4 comm

Show all posts →

**Experience**

**Clinical Specialist**

Medtronic · Full-time

Jul 2021 - Present · 2 yrs 2 mos

20.  Venue is proper in the District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District. As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022).

21.  Furthermore, venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Defendant Medtronic Ireland is subject to personal jurisdiction in this Judicial District, it has regularly conducted business in this Judicial District, certain of the acts complained of herein occurred in this Judicial District, and it is not a resident in the United States and may be sued in any judicial district.

## BACKGROUND AND PATENTS-IN-SUIT

22.  Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 6,916,483 ("the '483 Patent") titled "Bioabsorbable Plugs Containing Drugs" relating to controllably delivering

therapeutic agents to an orthopaedic surgical site that requires the implantation of a prosthesis within the site.

23.     By operation of law, the '483 Patent was originally issued and exclusively vested to the named inventors, James Ralph and Steven Tater, as of the issue date of the '483 Patent. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).  The inventors, in a written instrument dated June 30, 2003, and filed with the United States Patent and Trademark Office on June 9, 2005, assigned all rights, title, and interest in the '483 Patent to OsetoTools, LLC.

24.     OsteoTools, LLC, in a written instrument dated April 1, 2005, and filed with the United States Patent and Trademark Office on April 2, 2005, assigned all rights, title, and interest in the '483 Patent to BioDynamics, LLC.

25.     Formed in May 2004, BioDynamics, LLC is a medical design company dedicated to the development of new surgical implants, instruments and techniques that are reliable and less intrusive, that allow a surgeon to be more efficient, and which speed a patient's recovery. Their team of engineers has several decades of combined medical design experience and over 150 patents in the medical arena, ranging from orthopedic implants to biologics.

26.     Thereafter, in a written instrument dated June 15, 2021, and filed with the United States Patent and Trademark Office on July 8, 2021, BioDynamics LLC assigned all rights, title, and interest in the '483 Patent to First Commerce Bank related to settling litigation claims.

27.     Thereafter, in a written instrument dated September 28, 2021, and filed with the United States Patent and Trademark Office on November 17, 2021, First Commerce Bank assigned all rights, title, and interest in the '483 Patent to the Plaintiff New Amsterdam LLC. As such, Plaintiff New

Amsterdam LLC has sole and exclusive standing to assert the '483 Patent and to bring these causes of action.

28.     The '483 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

29.     The inventions described and claimed in the '483 Patent were invented individually and independently by James Ralph and Steven Tater.

30.     The '483 Patent includes numerous claims defining distinct inventions. As represented in Figs. 1A-J of the '483 Patent below, the inventions generally relate to implantable devices and methods thereof for dispensing one or more therapeutic agents at a surgical site. More particularly, the invention relates to devices and methods for controllably delivering therapeutic agents to an orthopaedic surgical site that requires the implantation of a prosthesis within the site.



31.     The priority date of each of the '483 Patent is at least as early as July 22, 2002.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

32.     Biodegradable materials are used in medicine for a variety of purposes including drug delivery devices and as aids in tissue repair. The physical and chemical properties of such materials can

vary as in the case of different polymeric materials, e.g., melting point, degradation rate, stiffness, etc. The variability in physical and chemical properties of biodegradable polymeric materials allows biodegradable implants made from such materials to be tailored to suit specific applications.

33.     At the time of the inventions, the porous bioabsorbable were generally isotropic materials. That is to say, the structure and composition of the materials were uniform in all directions. Any pharmacological therapeutic agents were generally distributed uniformly in the biodegradable carrier materials. This, in turn, means that the active agents were released uniformly into the wound site at a rate determined only by the rate at which the implant material biodegrades and the surface area of the implant. In practice, it would have been preferable to have controlled or phased release of active agents. Alternatively, it would sometimes have been desirable to have an initial rapid release of antiseptic followed by slower release of wound healing factors such as cytokines, EGF, etc.

34.     The inventors of the '483 Patent conceived new a modular drug delivery device and method for controllably delivering a therapeutic agent to a surgical site, particularly an orthopaedic surgical site into which a prosthesis has been implanted. The bioabsorbable drug delivery devices in accordance with the various embodiments of the '483 Patent include encapsulating the therapeutic agent in a bioabsorbable polymer, or a modular plug containing more than one bioabsorbable polymer, which will yield a controllable release of the therapeutic agent over a predefined dosing period, with residual therapeutic agent being thereafter delivered only until the bioabsorable polymer is completely biodegraded.

35.     The '483 Patent is a pioneering patent, and has been cited as relevant prior art in 99 subsequent United States Patent Applications, including Applications Assigned to such technology leaders

and academia as Tyco Healthcare, MIT, Microchips, Inc., Tyrx Pharma Inc. and Orbusneich Medical, Inc.

36.    The claims of the '483 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

37.    The expiration date of the '483 Patent is no earlier than June 9, 2023.

## MEDTRONIC'S INFRINGING PRODUCTS

38.    Upon information and belief, Medtronic makes, sells, advertises, offers for sale, uses, or otherwise provides drug eluting implants, including, but not limited to, the SINUVA Sinus Implant, that utilize the '483 Patent's patented implantable prosthetic designs. On information and belief, these drug eluting implants are operable for releasing a therapeutic agent into the body of an animal following implantation of the prosthesis within the body of the animal.

39.    On information and belief, Medtronic has manufactured and sold products that infringe the '483 Patent and which include at least, but not limited to, its SINUVA Sinus Implant ("Accused Instrumentalities").

40.    As shown in more detail below, Medtronic's products include each and every limitation of at least, but not limited to, claim 1 of the '483 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the

doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

41.    Images of Medtronic's drug eluting implants products are shown below. Medtronic's drug eluting implants products include the required (a) biodegradable polymer dimensions to fit snugly within the shaped recess in the prosthesis and (2) therapeutic agent that is released into the body of the animal during biodegration of the biodegradable polymer over a predefined dosing period, all of the same fundamental components claimed in the '483 Patent.

42.    For example, SINUVA Sinus Implant is shown in the following video from its website promoting the Accused Instrumentalities, as last visited on April 6, 2023, at



SINUVA | Non-Surgical Nasal Polyps Treatment Option

43.    Features of the Accused Instrumentalities below describe the functionality as required by the '483 Patent are found on Medtronic's website as last visited on April 6, 2023 at https://www.sinuva.com/wp-content/uploads/2021/03/SINUVA-Patient-Brochure-Print.pdf.

44.     On information and belief, Medtronic directs and completely and/or effectively controls, and/or instigates, the conduct of its subsidiaries and affiliates, including, but not limited to, Intersect, Medtronic USA and Medtronic Xomed, to design, develop, manufacture, market, advertise, manufacture, package, brand, offer for sale, and sell the Accused Products in and into the United States.

45.     Medtronic exercise complete domination and control over its subsidiaries and affiliates, including, but not limited to, Intersect, Medtronic USA and Medtronic Xomed, and/or direct and completely and/or effectively control all external and internal workings of those subsidiaries and affiliates.

**COUNT I**
**Infringement of U.S. Patent No. 6,916,483B2**

46.     Plaintiff incorporates the above paragraphs by reference.

47.     Medtronic without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

48.     Medtronic thus has infringed and continues to infringe at least claims 1 and 20 of the '483 Patent literally and/or under the doctrine of equivalents.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      15

49.     Medtronic has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '483 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the Osteo Video, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '483 Patent, without license or authority from Plaintiff. On information and belief, Medtronic knows that the induced acts constitute infringement of the '483 Patent.

50.     Medtronic individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '483 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '483 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '483 claims.

51.     Defendant Medtronic's subsidiaries, including but not limited to Intersect, Medtronic USA and Medtronic Xomed, are alter egos of Medtronic, and Medtronic is therefore responsible and liable for any activities performed by its subsidiaries on Medtronic's behalf in offering for sale, testing, selling, and/or importing the Accused Products in or into the United States and instructing or training end users to use the Accused Products in the United States. Medtronic directs and completely and/or effectively controls the conduct of its subsidiaries, including but not limited to Intersect, Medtronic USA and Medtronic Xomed. Medtronic controls the internal business

operations, workings, and affairs of its subsidiaries and related companies. Medtronic and its subsidiaries do not observe and enforce corporate formalities and share common executive level leadership. The relationship between Medtronic and its subsidiaries, parents, and related entities is a sham at least because Medtronic B directs and controls all external and internal activities of its subsidiaries, including but not limited to Intersect, Medtronic USA and Medtronic Xomed. Medtronic, and all key United States activities and decsions are made solely by Medtronic and its direct employees.

52.     Medtronic is also liable for the actions of its subsidiaries, including but not limited to Intersect, Medtronic USA and Medtronic Xomed, as to the manufacture, use, sale, offer for sale, testing, or import in or into the United States of the Accused Products under agency theory and/or because its subsidiaries, including but not limited to Intersect, Medtronic USA and Medtronic Xomed, function as mere agents of Medtronic as to the Accused Products. Any and all activities taken by Medtronic's subsidiaries, including but not limited to Intersect, Medtronic USA and Medtronic Xomed, relating to the development, manufacturing, use, sale, offer for sale, or import in or into the United States of the Accused Products are and/or were instigated and directed by Medtronic, and are therefore attributable to Medtronic.

53.     Defendant has been on actual notice of the '483 Patent at least as early as September 8, 2011 when its subsidiary Medtronic Vascular, Inc. cited to it within its own patent prosecution, as shown below.

| US20110218606A1 * | 2010-03-02 | 2011-09-08 | Medtronic Vascular, Inc. | Methods for Stabilizing Femoral Vessels |
|---|---|---|---|---|

See   https://patents.google.com/patent/US6916483B2/en?oq=6%2c916%2c483#citedBy   and https://patents.google.com/patent/US20110218606A1/en?oq=6%2c916%2c483#patentCitations

54.   Defendant's direct and indirect infringement of the '483 Patent has thus been committed with knowledge of the '483 Patent, making Medtronic liable for direct, indirect, and willful infringement.

55.   Medtronic's infringement of the '483 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

56.   Plaintiff has been damaged because of the infringing conduct by Medtronic alleged above. Thus, Medtronic is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.   Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, New Amsterdam LLC respectfully requests the Court enter judgment against Defendant as follows:

1.   Declaring that Defendant has infringed the '483 Patent;

2.   Awarding New Amsterdam LLC its damages suffered because of Defendant's infringement of the '483 Patent;

3.   Awarding New Amsterdam LLC its costs, reasonable attorneys' fees, expenses, and interest;

4.   An award to New Amsterdam LLC of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Medtronic's willful infringement of the '483 Patent;

5.      Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from

further acts of infringement with respect to the '483 Patent;

6.      Awarding New Amsterdam LLC ongoing post-trial royalties for infringement of the non-

expired '483 Patent; and

7.      Granting New Amsterdam LLC such further relief as the Court finds appropriate.

## **JURY DEMAND**

New Amsterdam LLC demands trial by jury, under Fed. R. Civ. P. 38.


Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420


Hao Ni
Texas Bar No. 24047205
hni@nilawfirm.com
Neal Massand
Texas Bar No. 24039038
nmassand@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231>
Tel: (972) 331-4600

Fax: (972) 314-0900

**ATTORNEYS FOR PLAINTIFF**